# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RANJIT SINGH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>21VIANET GROUP, INC., SHENG CHEN, and SHANG-WEN HSIAO,<br><br>Defendant. | Case No.: 2:14-cv-00894<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Ranjit Singh, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of United States Securities and Exchange Commission ("SEC") filings by 21Vianet Group, Inc. ("21Vianet" or the "Company"), and analyst and other media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.    This action is a securities class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC, by Plaintiff on behalf of a class of all persons and entities who purchased American Depositary Shares ("ADSs") between April 21, 2011 and September 10, 2014,

inclusive (the "Class Period") to recover damages caused to the Class by defendants' violations of the securities laws.

2.  21Vianet is a Cayman Islands corporation with headquarters in the People's Republic of China ("China"). Founded in 1999, 21Vianet conducts its business primarily in China through its operating subsidiaries as a provider of carrier-neutral Internet data center ("IDC") services.

3.  In April 2011, the Company went public with an Initial Public Offering (the "IPO") in the United States underwritten by six American Banks. The Company issued 13 million ADS, representing 78 million Class A ordinary shares. The ADSs are registered with the SEC.

4.  On September 10, 2014, research firm Trinity Research Group issued a 121-page report entitled "A Ponzi Scheme of Acquisitions: 21 Vianet Group Exposed." Among other things, Trinity Research Group uncovered evidence that the Company misrepresented its IDC network assets and performance, misrepresented the financials of at least some if not all of its acquired companies, and derives substantial revenue from a business unit that is almost universally known as illicit in Chinese IDC circles.

5.  21Vianet shares plunged on this news, falling $1.76 per share or over 8% on unusually heavy volume from its previous closing price in one day.

6.  21Vianet vigorously denied most of the accusations and hastily convened a conference call on September 11, 2014 repeating previous false statements to investors. However, the denials raised more questions than they answered; the ADS price continued to drop, damaging class members.

## JURISDICTION AND VENUE

7. Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

9. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §1391(b) as the alleged misleading public filings and press releases entered this district.

10. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11. Plaintiff Ranjit Singh ("Singh"), as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the ADSs of 21Vianet during the Class Period and has been damaged thereby. Plaintiff Singh is a resident of the United Kingdom.

12. Defendant 21Vianet is a Cayman Islands corporation headquartered in China. Founded in 2009, it purportedly provides carrier-neutral IDC services to Internet companies, government entities, blue-chip enterprises, and small- to mid-sized enterprises in the PRC and primarily generates revenues from providing hosting and related services and managed network services. Its ADSs trade on the NASDAQ under the symbol "VNET." At the end of the Class Period, the company had more than 66 million ADSs outstanding.

13. Defendant Sheng Chen ("Chen") is a co-founder of the Company and has been the Chairman of the Board of Directors and Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Shang-Wen Hsiao ("Hsiao") has been the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Chen and Hsiao are referred to here, collectively, as the "Individual Defendants."

16. Defendant 21Vianet and the Individual Defendants are referred to herein, collectively, as the "Defendants."

17. Each of the Individual Defendants:

   (a) directly participated in the management of the Company;

   (b) was directly involved in the day-to-day operations of the Company at the highest levels;

   (c) was privy to confidential proprietary information concerning the Company and its business and operations;

   (d) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   (e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

   (f) approved or ratified these statements in violation of the federal securities laws.

18. As officers, directors and controlling persons of a publicly-held company whose ADSs are and were registered with the SEC pursuant to the Exchange Act, and were traded on

NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly traded stock to reflect truthful and accurate information.

19. 21Vianet is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to 21Vianet under *respondeat superior* and agency principles.

## ALLEGATIONS OF FALSE STATEMENTS

21. The Class Period begins on April 21, 2011. On that day, 21Vianet completed the IPO, selling 13 million ADSs at $15.00 each and raising $195 million in gross proceeds. Subsequently, the Company sold another 1.95 million ADSs as part of the underwriter's allotment.

22. The Company's Registration Statement on Form F-1 filed with the SEC on April 4, 2011 and as amended as Amendment No. 3 to the form F-1 on April 20, 2011, along with the prospectus that formed part of the registration statement used to conduct the IPO (collectively, the "Registration Statement"), contained false and misleading statements, including RMB 185.61 in combined revenue for the full fiscal year 2010 for two companies that provide managed network services in China: Zhiboxintong (Beijing) Network Technology Co., Ltd.; and Beijing Chengyishidai Network Technology Co., Ltd. (collectively, the "Managed Network Entities").

23.     The Managed Network Entities were partially acquired in September 2010 (51%) and fully required in December 2011.

24.     The Registration Statement was signed by Defendant Chen. Each of amendments to the Form F-1 was signed by Defendant Hsiao.

25.     On February 27, 2012, 21Vianet issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2011. For the quarter, 21Vianet reported net revenues of RMB318.3 million (US$50.6 million), representing growth of 61.3%. Net revenues for the full year 2011 totaled RMB1.0 billion (US$162.2 million), representing growth of 94.4%. The February 27, 2012 press release contained additional statements from Defendant Chen pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

> "We are excited to announce that for the full year 2011, and for the first time in our company's history, our annual net revenues exceeded the RMB1 billion milestone. Our success in the fourth quarter and full year of 2011 was led by solid financial and operational results across the board. This growth was driven by surging demand for both hosting and managed network services. With our diverse base of over 1,500 customers, demand for our services continued to grow, which was characterized by an increase in demand from customers conducting online video, online gaming and e-Commerce businesses."

26.     On April 18, 2012, 21Vianet filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2011 (the "2011 20-F") that reiterated the Company's previously announced quarterly and annual financial results and financial position and touted the Company's operation of 63 data centers located in 33 cities throughout the PRC – 55 partnered and 8 self-built – with over 7,816 cabinets under management that house over 55,131 servers.

27. The 2011 20-F was signed by Defendant Chen. In addition, the 2011 20-F contained signed SOX certifications by Defendants Chen and Hsiao falsely attesting to the accuracy of the 2011 20-F.

28. On March 5, 2013, 21Vianet issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2012. For the quarter, 21Vianet reported net revenues of RMB417.8 million (US$67.1 million), representing growth of 31.3%. Net revenues for the full year 2012 totaled RMB1.5 billion (US$244.6 million), representing growth of 49.3%. The March 5, 2013 press release contained additional statements from Defendant Chen pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

> "We are extremely pleased with our achievements for 2012 which proved to be a pivotal year for 21Vianet. We significantly expanded the scale of our business, delivering growth of almost 50% in revenues. Moreover, we focused on making significant upgrades to our network backbone, to support our growth in data transmissions for 2013. These improvements have greatly increased the efficiency and speed of our network and further strengthen the foundation for our future growth."

> "Looking forward, we are excited about the growth opportunities for 2013. Our recently announced partnership with Microsoft to launch Microsoft Azure and Office 365 services in China coupled with the construction of what will be one of the largest data centers in China, have provided us strong foundation for growth going forward. We believe that these efforts have better positioned us to take advantage of the growth trends taking place in China for internet and cloud infrastructure services, further strengthening our position as a leading internet infrastructure provider in Greater China."

29. On April 19, 2013, 21Vianet filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2012 (the "2012 20-F") that reiterated the Company's previously announced quarterly and annual financial results and financial position and touted the Company's operation of 81 data centers located in 42 cities throughout China – 71

partnered and 10 self-built – with over 11,900 cabinets under management that house over 67,000 servers.

30. The 2012 20-F was signed by Defendant Chen. In addition, the 2012 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Chen and Hsiao falsely attesting to the accuracy of the 2012 20-F. The 2012 20-F was subsequently amended on April 26, 2013 and signed by Defendant Chen.

31. On March 6, 2014, 21Vianet issued a press release announcing results for the fourth quarter and fiscal year ended December 31, 2013. For the quarter, 21Vianet reported net revenues of RMB545.9 million (US$90.2 million), representing growth of 30.6%. Net revenues for the full year 2012 totaled RMB1.97 billion (US$324.9 million), representing growth of 29.0%. The March 6, 2014 press release contained additional statements from Defendant Chen pertaining to the Company's fourth quarter and fiscal 2013 performance, including in relevant part:

> "In 2013, we made tremendous strides in expanding our capacity and market footprint, as well as diversifying our services through forging strategic partnerships with world-class global corporations. For 2014, we aim to deploy an additional 10,000 cabinets and achieve approximately 25,000 total cabinets by the end of 2014 for our core IDC business. For our cloud partnerships with Microsoft and IBM, not only will these help expedite our efforts to develop a premium cloud ecosystem comprised of both public and private cloud services, but also will support our customer expansion and diversification. Based on this foundation, we expect our cloud businesses to contribute approximately 10% of our full year 2014 revenue. Building upon the robust foundation we established in 2013, we are well and uniquely-positioned as an integrated internet services provider in China supported by multiple secular business drivers that will help propel our growth going forward."

32. On April 9, 2014, 21Vianet filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2013 (the "2013 20-F") that reiterated the Company's previously announced quarterly and annual financial results and financial position

and touted the Company's operation of 81 data centers located in 43 cities throughout the PRC – 69 partnered and 12-self built – with over 14,000 cabinets under management that house over 76,000 servers.

33.     The 2013 20-F was signed by Defendant Chen. In addition, the 2013 20-F contained signed SOX certifications by Defendants Chen and Hsiao falsely attesting to the accuracy of the 2012 20-F.

34.     The statements referenced in ¶¶ 22 – 33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company overstated the number of cabinets in its IDC network; (2) a significant percentage of their outsourced data center partnerships have been terminated; (3) the Company misrepresented the financials of its Managed Network Entities; (4) the Company's managed network services business that accounts for a significant portion of the Company's revenue is run illegally; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

35.     On September 10, 2014, research firm Trinity Research Group issued a report asserting that the Company's financial performance, business prospects, and true financial condition have been overstated.

36.     Specifically, the Trinity Research Group Report revealed that:

- As of the second quarter of 2014, the Company has overstated the number of cabinets in its IDC network by at least 2,460 (14.5% reported) and

> overstated their utilization by at least 11.1 points. This translates to a 27.3% overstatement in revenue.

- The Company lists 72 data centers – 60 partnered 12 self-built – in their IDC network on the Chinese version of its corporate website. Of the 60 partnered data centers, 31 of these alleged partnerships have been terminated.

- Based on filings made to the State Administration for Industry and Commerce ("SAIC"), a Chinese governmental agency, revenue figures of the Managed Network Entities for the fiscal year 2010 was only RMB 122.89 million. Therefore the RMB 185.61 reported revenue figure in the Company's Registration Statement was overstated by 51%.

- China Telecom, the largest fixed line carrier in China and one of two monopolistic entities in the telecom industry, has blacklisted the Company and various subsidiaries of its Managed Network Entities for breaking the law – the illegal reselling of bandwidth.

37. The Trinity Research Group report shocked the market on September 10, 2014, and caused the Company's stock to fall $1.76 per share or over 8% from its previous closing price on extraordinary volume to close at $20.12 per share that day.

38. On September 11, 2014, 21Vianet convened a conference call in an attempt to dispel the Trinity Research Group Report. However, the denials were inadequate and the Company's stock fell another $4.60 per share or over 22% from its previous closing price to close at $15.52 per share that day.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the ADSs of 21Vianet during the Class Period (the "Class") and who were damaged thereby. Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, 21Vianet securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by 21Vianet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      (a)      whether the Exchange Act was violated by defendants as alleged herein;

      (b)      whether statements made by defendants misrepresented material facts about the business, operations and management of 21Vianet; and

      (c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

45. The market for 21Vianet ADSs was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, 21Vianet securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired 21Vianet securities relying upon the integrity of the market price of 21Vianet securities and market information relating to 21Vianet, and have been damaged thereby.

46. During the Class Period, defendants materially misled the investing public, thereby inflating the price of 21Vianet securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false

and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

47. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about 21Vianet's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of 21Vianet and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing 21Vianet securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of 21Vianet ADSs was removed and the price of 21Vianet ADSs declined dramatically, causing losses to plaintiff and the other members of the Class.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
*AFFILIATED UTE*

48. Neither Plaintiff nor the Class need prove reliance - either individually or as a class because under the circumstances of this case, which involves a failure to disclose the material related party transactions described herein above, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts

withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against Defendant 21Vianet and the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This claim is asserted against 21Vianet and the Individual Defendants.

51. During the Class Period, the Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the 21Vianet's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendants, and each of them, took the actions set forth herein.

52. The Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for 21Vianet 's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53. The Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of 21Vianet as specified herein.

54. The Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of 21Vianet 's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about 21Vianet and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of 21Vianet's securities during the Class Period.

55. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations,

and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56. The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing 21Vianet's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by these Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, the Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of 21Vianet securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of 21Vianet 's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired

Case 2:14-cv-00894-JRG-RSP Document 1 Filed 09/12/14 Page 17 of 20 PageID #: 17

21Vianet securities during the Class Period at artificially high prices and were or will be damaged thereby.

58. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding 21Vianet 's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their 21Vianet securities, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

59. By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's Securities during the Class Period.

61. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

### COUNT II

#### For Violations of §20(a) of the Exchange Act
#### Against the Individual Defendants

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of 21Vianet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness

17

of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

64. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, 21Vianet and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

66. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

67. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Awarding rescissory damages; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 12, 2014                    Respectfully submitted,

**PAYNE MITCHELL LAW GROUP**

*/s/ R. Dean Gresham*
_____
R. Dean Gresham, Esq. (State Bar No. 24027215)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Tel: (214) 252-1888
Fax: (214) 252-1889
Email: dean@paynemithcell.com

OF COUNSEL:

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor

New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

Attorneys for Plaintiffs