UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

RANJIT SINGH, Individually and on
Behalf of All Others Similarly Situated,

                                    Plaintiff,

        - against-

21VIANET GROUP, INC., SHENG CHEN,
SHANG-WEN HSIAO, TERRY WANG,
STEVE ZHENQING ZHANG, AND ERIC
CHU,

                                    Defendants.

**Case No. 2:14-cv-00894-JRG-RSP**


**LEAD PLAINTIFF'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION
EXPENSES; MEMORANDUM OF LAW
IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................... 1

III.  THE COURT SHOULD APPROVE THE FEE REQUEST .............................. 2

    A.  Lead Counsel is Entitled to Compensation Based Upon the Benefits Created by the Litigation ........................................................................................... 2

    B.  The Court Should Award Attorneys' Fees Using the Percentage Method ............ 2

    C.  An Award of 33 1/3% is Appropriate Under the Percentage Method ................... 4

    D.  The *Johnson* Factors Confirm the Reasonableness of the Requested Fee ............. 5

        1.  The Time and Labor Required ....................................................................... 6

        2.  Novelty and Difficulty of the Issues ............................................................ 7

        3.  The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys .................................. 8

        4.  The Preclusion of Other Employment ........................................................... 9

        5.  The Customary Fee for Similar Work in the Community ............................... 9

        6.  Whether the Fee is Fixed or Contingent ..................................................... 10

        7.  Time Limitations Imposed by the Client or the Circumstances ................... 10

        8.  The Amount Involved and the Results Obtained ......................................... 10

        9.  The Undesirability of the Case .................................................................... 11

        10.  Nature and Length of the Professional Relationship with the Client ........... 12

        11.  Awards in Similar Cases ............................................................................. 12

    E.  A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .... 12

IV.  PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ................. 13

V.     THE COURT SHOULD AWARD LEAD PLAINTIFF HER COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4) ........................................................................ 14

VI.    CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ........................................................................ 7

*Barrera v. Nat'l Crane Corp.*,
   2012 WL 242828 (W.D. Tex. Jan. 25, 2012) ................................................ 5

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) ........................................................................ 2

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................................ 3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................... 2, 3

*Burford v. Cargill, Inc.*,
   2012 WL 5471985 (W.D. La. Nov. 8, 2012)........................................ 4, 9, 13, 14

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)........................................................................................ 3

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965696 (W.D. La. Mar. 3, 2015) .................................................. 4

*Clark v. Lomas & Nettleton Fin. Corp.*,
   79 F.R.D. 641 (N.D. Tex. 1978) .................................................................... 7

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 263 (W.D. Tex. 2007) ............................................................... 13

*Di Giacomo v. Plains All Am. Pipeline*,
   2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ...................................... 7, 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................... *passim*

*Faircloth v. Certified Fin. Inc.*,
   2001 WL 527489 (E.D. La. May 16, 2001)................................................... 5

*Garza v. Sporting Goods Properties, Inc.*,
   1996 WL 56247 (W.D. Tex. Feb. 6, 1996).............................................. 4, 9

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996) ................................................................... 14

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997) ............................................................... 4, 5

*In re Educ. Testing*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ................................................................. 3

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................................ 11, 13

*In re Giant Interactive Grp., Inc. Secs. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................... 11

*In re Lease Oil Antitrust Litig. (No. II)*,
   186 F.R.D. 403 (S.D. Tex. 1999) ....................................................................... 4

*In re OCA, Inc. Sec. & Derivative Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ................................................... 7, 11

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*,
   No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ........................................ 4

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................................. 12

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) ........................................................................ 5

*In re Vioxx Prod. Liab. Litig.*,
   2013 WL 5295707 (E.D. La. Sept. 18, 2013) ................................................... 5

*In re Xcel Energy, Inc. Sec. Litig.*,
   *364 F. Supp. 2d 980 (D. Minn. 2005)* ............................................................... 7

*Jenkins v. Trustmark Nat'l. Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) ............................................................ *passim*

*Johnson v. Georgia Highway Express*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................. 3

*Jones v. Diamond*,
   636 F.2d 1364 (5th Cir. 1981) ......................................................................... 10

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................. 7

*Marcus v. J.C. Penney Co., Inc.*,
   2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ..................................... 5, 14

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (Nov. 8, 2005 N.D. Tex.) .................................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ............................................. 2, 3, 4

*Simons v. Dynacq Healthcare, Inc.*,
   No. H-03-5825 (S.D. Tex Jan. 10, 2007) ............................................ 14

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ........................................................................ 3

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ............................................................. 12

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
   551 U.S. 308 (2007) ........................................................................ 2

*Trs. v. Greenough*,
   105 U.S. 527 (1882) ........................................................................ 3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .......................................................... 3, 5

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ......................................... 14

*Vassallo v. Goodman Networks, Inc.*,
   2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) ................................. 4, 5, 12

*Williams v. Go Frac, LLC*,
   2017 WL 3699350 (E.D. Tex. Apr. 26, 2017) ............................... 5, 12, 14

## STATUTES

15 U.S.C. §78u-4(a)(4)14 ...................................................................... ii, 14

15 U.S.C. § 78u–4(a)(6) ....................................................................... 4

## I.    INTRODUCTION

Lead Counsel[1] has succeeded in obtaining $9 million in cash (the "Settlement") for the benefit of the Class in settlement of the above-captioned action (the "Action").  This is a highly-favorable recovery in the face of substantial risk, and is the result of Lead Counsel's vigorous, persistent, and skilled efforts.  In consideration of Lead Counsel's efforts and the excellent results achieved for Lead Plaintiff Emily Wu ("Lead Plaintiff") and the Class, Lead Counsel hereby applies for an award of attorneys' fees in the amount of 33 1/3% of the Settlement Fund and reimbursement of litigation expenses incurred in prosecuting this Action in the amount of $70,343.38.   Concomitantly, Lead Plaintiff seeks a compensatory award of $2,500 as reimbursement for the costs and expenses incurred as a direct result of her representation of the Class.   For all the reasons set forth herein, and in the Sams Declaration, Lead Counsel respectfully submits that the requested attorneys' fees, reimbursement of costs and expenses, and the plaintiff contribution award are fair and reasonable under the applicable standards and should, therefore, be awarded by the Court.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Sams Declaration is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive work performed by Lead Counsel, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

/ / /

/ / /

/ / /

---

[1]All capitalized terms not defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement filed with the Court on April 6, 2018 (ECF No. 51-1), or the concurrently-filed Declaration of Ex Kano S. Sams II in Support of: (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; (2) Award of Attorneys' Fees and Expenses; and (3) Award of Contribution Award to Lead Plaintiff (the "Sams Declaration" or "Sams Decl.").  Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to the Sams Declaration.

## III.    THE COURT SHOULD APPROVE THE FEE REQUEST

### A.    Lead Counsel is Entitled to Compensation Based Upon the Benefits Created by the Litigation

The Supreme Court and the Fifth Circuit have consistently recognized that a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the common benefit or common fund equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000) (same).[2]

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on classes of persons and to discourage future misconduct of a similar nature. *See Jenkins v. Trustmark Nat'l. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("The doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.").   The Supreme Court has emphasized that private securities cases, such as this one, are "an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 320 n.4 (2007).  Thus, common-fund fee awards of the type requested here encourage meritorious class actions, and thereby promote private enforcement of, and compliance with, the securities laws.

### B.    The Court Should Award Attorneys' Fees Using the Percentage Method

 "In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly

---

[2] Unless otherwise noted, all citations and internal quotations are omitted and emphasis is added.

rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012).  The Fifth Circuit affords "district courts the flexibility to choose between the percentage and lodestar methods," with their analyses under either approach informed by the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis.  *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939); *Boeing*, 444 U.S. at 478-79.  Indeed, as the Supreme Court declared in *Blum v. Stenson*, 465 U.S. 886 (1984), "under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class."  *Id.* at 900 n.16.

The Fifth Circuit also has endorsed the percentage method, noting that "district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the preferred method."  *Dell*, 669 F.3d at 643-44; *see also Shaw*, 91 F. Supp. 2d at 964 (percentage method superior to lodestar method).  The percentage method "allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643.  Conversely, "[t]he lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed."  *Shaw*, 91 F. Supp. 2d at 964.[3]

The Fifth Circuit also has recognized that the percentage method is especially appropriate in securities cases. "Part of the near-universal adoption of the percentage method in securities cases is that the [Private Securities Litigation Reform Act of 1995 ("PSLRA")] contemplates such a calculation."  *Dell*, 669 F.3d at 643; *see also Erica P. John Fund, Inc. v. Halliburton Co.*,

---

[3] *See also* Report of Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 246-49 (1985) (identifying deficiencies with lodestar method); *In re Educ. Testing*, 447 F. Supp. 2d 612, 628-69 (E.D. La. 2006) (discussing pervasive criticism of lodestar method).

2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) ("The PSL[R]A expressly contemplates the percentage method, providing that [t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class") (*citing* 15 U.S.C. § 78u–4(a)(6)). Accordingly, the Court should apply the percentage method.

### C.     An Award of 33 1/3% is Appropriate Under the Percentage Method

Pursuant to the percentage method, the court "first determines the actual monetary value conferred to the class by the settlement" and then "applies a benchmark percentage to this value." *Vassallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *3-4 (E.D. Tex. Oct. 14, 2016). After setting the benchmark, the Court applies the *Johnson* factors "to determine whether the percentage should be adjusted upward or downward." *Id*. at *4.

While there is no general rule as to what constitutes a reasonable percentage, "district courts in the Fifth Circuit have awarded percentages of approximately one-third" as a reasonable contingency fee. *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *2-3 (W.D. La. Nov. 8, 2012) (customary contingency fee "ranges from 33 1/3% to 50%").[4] Fees in the range of 25% to 33.34% "have been routinely awarded in class actions" and the average award is "around one-third of the recovery" regardless of which method was used. *Shaw*, 91 F. Supp. 2d at 972.[5]

---

[4] *Accord Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third"); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) ("district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee").

[5] *See also Halliburton*, 2018 WL 1942227, at *12 (considering *Johnson* factors and holding that 33 1/3% contingency was "reasonable and fair."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (33 1/3% contingency "is common in this geographic area" and "has been approved in other common fund cases");*Schwartz v TXU Corp.*, 2005 WL 3148350, at *27 (Nov. 8, 2005 N.D. Tex.) (collecting cases and stating that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method."); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) ("33 1/3% to 40% is the customary contingency fee range."); *In re Prudential-*

In addition to finding awards of one-third or more reasonable, courts in the Fifth Circuit, including this Court, have routinely granted such awards. *See, e.g.*, *Williams v. Go Frac, LLC*, 2017 WL 3699350, at *2–3 (E.D. Tex. Apr. 26, 2017) (Gilstrap, J) (awarding 35% of the settlement, finding the requested fee to be "fair and reasonable"); *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) (Mitchell, MJ) (awarding 30% of $97.5 million securities settlement and concluding that "Lead Counsel's request for a fee of 30% is not excessive. It is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the fund or more."); *TXU Corp.*, 2005 WL 3148350, at *31 ("The vast majority of Texas federal courts . . . have awarded fees of 25%–33% in securities class actions."); *Vassallo*, 2016 WL 6037847, at *4, *6 (awarding approximately 39.78% of common fund); *Jenkins*, 300 F.R.D. at 307 (awarding one third of settlement fund).[6] Accordingly, there is ample Fifth Circuit precedent to support the requested fees of 33 1/3% of the Settlement Fund.

### D.      The *Johnson* Factors Confirm the Reasonableness of the Requested Fee

In *Johnson*, the Fifth Circuit stated that the district court should consider several factors in setting a fee award. These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any

---

*Bache Energy Income Partnerships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%.").

[6] *See also In re Shell Oil Refinery*, 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding aggregate of one-third); *Combustion*, 968 F. Supp. at 1136, 1142 (awarding 36% on a $127,396,000 settlement fund); *Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) (awarding 33.34% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, 2013 WL 5295707, at *4–5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Barrera v. Nat'l Crane Corp.*, 2012 WL 242828, at *5 (W.D. Tex. Jan. 25, 2012) (awarding one-third).

particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *TXU Corp.*, 2005 WL 3148350, at *28.  As demonstrated below, each of the relevant *Johnson* factors weighs in favor of the requested fee.

### 1.       The Time and Labor Required

As detailed herein and in the Sams Declaration, Lead Counsel litigated the Action for nearly four years.   ¶¶46-67.  In the course of the litigation, Lead Counsel, among other things: (a) conducted a detailed investigation of potential claims against 21Vianet and the Individual Defendants; (b) moved pursuant to the PSLRA on behalf of Emily Wu for appointment of Lead Plaintiff and Lead Counsel; (c) prepared a detailed 84-page amended complaint based upon a thorough investigation; (d) successfully opposed Defendants' comprehensive and detailed motion to dismiss; (e) consulted extensively with experts in the fields of accounting, economics and damages; (f) prepared a detailed mediation brief with numerous exhibits; (g) engaged in a full-day mediation session; (h) participated in numerous follow-up communications with the mediator and defense counsel regarding settlement of the Action; (i) negotiated the settlement documentation over the course of many weeks; and (j) drafted preliminary and final approval motions and supporting documentation.[7]  ¶4.

The efforts that were required to complete these tasks, as well as others, were extensive and represented an immense risk, given the contingency-based nature of Lead Counsel's representation.   ¶¶4-6, 47-48, 51-55, 63-67, 78-85, 97, 99-105, 108.  To date, Plaintiff's Counsel has spent over 1,927 hours litigating this case.   ¶103.  Plaintiff's Counsel has also incurred $73,343.38 in unreimbursed litigation expenses.  ¶108.

---

[7] Lead Counsel's investigation for the amended complaint included, among other things, a review and analysis of: (a) 21Vianet's public filings with the SEC and the State Administration for Industry & Commerce of the People's Republic of China; (b) public reports and news articles in both the U.S. and China; (c) ADS movement and pricing data; (d) transcripts of 21Vianet's investor calls; and (e) interviews with former employees and other potential witnesses with relevant information; and (f) other publicly available material and data.  ¶52.

In addition, the timing of the Settlement itself is a benefit that Lead Counsel has conferred on the Class.  Achieving a beneficial outcome for the Class at this stage of the litigation, after prevailing on the motion to dismiss under the heightened pleading standards of the PSLRA, but prior to the commencement of formal discovery, summary judgment and trial, weighs in favor of awarding the requested fee.  *See TXU Corp.*, 2005 WL 3148350, at *29 (efficiency and effectiveness should be rewarded; awarding fee requested where action settled while motion to dismiss pending); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (emphasis on number of hours penalizes counsel for obtaining early settlement).[8]  As such, the Court should find that a settlement at this stage benefits the Class, and that the labor and time Lead Counsel invested in this case supports the requested fee.

### 2.    Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Lead Counsel's request for attorneys' fees.  As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983).  Even before the PSLRA, courts had noted that "a securities case, by its very nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).  Following passage of the PSLRA, securities class actions have only become more difficult to prosecute.  This is especially true in the Fifth Circuit.  *See, e.g.*, *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, A.J., sitting by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *TXU Corp.*, 2005 WL 3148350, at *32 (finding approximately 90% of Fifth Circuit PSLRA pleading decisions have upheld dismissal of complaints and recognizing case was risky when lead counsel accepted retention); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Moreover, Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult in this circuit.").

---

[8] *See also In re Xcel Energy, Inc. Sec. Litig.*, 364 F. Supp. 2d 980, 983 (D. Minn. 2005) (early settlements are consistent with the purposes of the Federal Rules of Civil Procedure).

Here, although Lead Plaintiff believes that the allegations of the Complaint would ultimately translate into a strong case for liability, Lead Plaintiff is also aware that many risks were involved in proving her claims.   Indeed, Lead Plaintiff faced numerous hurdles to establishing liability.  As detailed in the Sams Declaration, Defendants raised credible arguments challenging the sufficiency of the allegations with regard to materiality, scienter, and loss causation.  ¶¶4-6, 53, 55, 61, 78-85, 97.  Lead Plaintiff bears the burden of proving each of those three elements. Thus, if Defendants prevailed on any of the elements, it would be fatal to Lead Plaintiff's claims.

In addition, 21Vianet is a Chinese corporation with its assets in China, which itself presents a different set of unique challenges.  For example, the majority of relevant documents and witnesses are located in China, and Chinese laws restrict discovery and govern the use of private data and other sensitive information.  Discovery, therefore, would be time-consuming, expensive, and challenging.   Depositions would require international travel and interpreters, and large numbers of documents would have to be translated from Chinese into English.  ¶82.

Even if Lead Plaintiff were to prevail on the merits and on appeal, she would face further hurdles to enforcing any judgment against 21Vianet because its assets are predominantly located in China.  Defendants claim that Chinese courts never enforce U.S. court judgments in non-family disputes. ¶84.  Moreover, even though Lead Plaintiff prevailed at the motion to dismiss stage, there is no guarantee that she would have prevailed had the litigation continued. Defendants would have likely continued to vigorously contest the merits for class certification, as well as liability, loss causation, and damages through summary judgment, trial, and appeal.

### 3.       The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – also support the requested fee award.  As demonstrated by their respective firm resumes, Plaintiff's Counsel have many years of experience in complex federal civil litigation, particularly in litigation of shareholder, securities, and other class actions. *See* Ex. F, Ex. D-3, Ex. E-4, and Ex. E-5.  Plaintiff's Counsel's experience allowed it to obtain

significant investigative materials (including from sources in China) in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, and formulate strategies to prosecute it effectively, thereby allowing Lead Plaintiff to prevail during the motion to dismiss stage. *See TXU*, 2005 WL 3148350, at \*30 (this factor weighs in favor of approval where despite the PSLRA restrictions, due to Lead Counsel's "diligent efforts . . . and their skill and reputations" they "were able to negotiate a very favorable" settlement).

Defendants were also represented by highly experienced lawyers from Skadden, Arps, Slate, Meagher & Flom LLP, a prestigious and well-respected defense firm, which vigorously and ably defended the Action for nearly four years. ¶107.  The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by Lead Plaintiff's attorneys and "confirms the superior quality of their representation." *TXU Corp.*, 2005 WL 3148350, at \*30.  Accordingly, these factors also support the requested fee.

### 4.      The Preclusion of Other Employment

Plaintiff's Counsel spent over 1,927  hours litigating this case on behalf of Lead Plaintiff and the Class.[9]  ¶103.  This is time counsel could have devoted to other matters.  Accordingly, this factor further supports the requested fee. *See Burford*, 2012 WL 5471985, at \*3  ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

### 5.      The Customary Fee for Similar Work in the Community

As discussed in greater detail above, *supra* Section III.C, the 33 1/3% requested fee is well within the range of customary fees. *See, e.g.*, *Garza*, 1996 WL 56247, at \*31 ("33 1/3% to 40% is the customary contingency fee range."); *Burford*, 2012 WL 5471985, at \*3 (customary contingency fee "ranges from 33 1/3% to 50%"); *TXU Corp.*, 2005 WL 3148350, at \*31 ("The vast majority of Texas federal courts . . . have awarded fees of 25%–33% in securities class

_____

[9] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Class.

actions.").  Therefore, this factor supports approving the requested fee.

### 6. Whether the Fee is Fixed or Contingent

For over four years, Lead Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs in connection with the litigation.  Contingency risk alone is a factor supporting the requested fee.  As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Further, the risk of loss in this case was not illusory.  As discussed above, securities fraud cases are extremely complex, subject to the PSLRA's heightened pleading standards, and success is never assured – especially in the Fifth Circuit.  *See supra* Section III.D.2.  This case was no different.  Lead Counsel faced significant challenges in terms of establishing liability and damages.  ¶¶4-6, 53, 55, 61, 78-85, 97.  Had Lead Plaintiff won at trial, there was no guarantee that a jury would award a judgment greater than the Settlement, Lead Plaintiff would have faced challenges enforcing a judgment, and there was still a risk of loss on appeal.  Consequently, this factor weighs in favor of approving the fee request.  *See Jenkins*, 300 F.R.D. at 309 ("[r]ecognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment").

### 7. Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8. The Amount Involved and the Results Obtained

If Lead Plaintiff overcame **all** the obstacles to establishing liability, and completely prevailed on **all** her loss causation and damages theories, the $9 million settlement would equate to approximately 3.6% of the Class's damages. ¶97.  However, Defendants had strong arguments contesting liability, loss causation and damages. Assuming, *arguendo*, that Defendants' arguments succeeded, the Settlement represents 23.8% to 31.9% of the Class' maximum

provable damages.  A recovery in this range (or even 3.6%) is well within the range of other securities class action settlements with similar total damage amounts and Chinese-based defendants.  *See id*; Ex. B (excerpts from Stefan Boettsich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (NERA 29 Jan. 2018)) at 32 (noting that "[c]ases targeting firms located in China also tend to settle for less than comparable cases against domestic firms"); and at 37, Fig. 28 (the median ratio of settlements between 1996 and 2017 to investment losses was 2.6% for cases alleging investor losses of between $200 and $399 million); at 38, Fig. 29 (the median ratio of settlements to investor losses between 2008 and 2017 ranged from 1.3% to 2.7%); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").[10]

### 9.    The Undesirability of the Case

The undesirability of a case can be a factor in justifying the award of a requested fee. Securities cases have been recognized as "undesirable" due to the elevated risks, required lengthy investigations through informal discovery, high out-of-pocket costs, and a possibility of no recovery.  *See Halliburton*, 2018 WL 1942227, at *12 ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against . . . well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee.").  This was never an easy case and the risk of no recovery was always high.  When Lead Counsel undertook representation of Lead Plaintiff and the Settlement Class in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  There was only one other movant for lead plaintiff (ECF No. 10), who later submitted a notice of non-opposition (ECF No. 14),

---

[10] The result obtained is also supported by Defendants' limited insurance and the significant obstacles to enforcing a judgment in China.  ¶¶82-84; *see In re Giant Interactive Grp., Inc. Secs. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (because defendant had no assets outside of China, "any judgment obtained in the [U.S.] would have been of uncertain enforceability overseas"); *In re LDK Solar Secs. Litig.*, 2010 WL 598361, at *1 (N.D. Cal. Feb. 17, 2010) (recognizing "difficulty [of] enforcing any eventual judgment against [defendant's] assets in China").

further demonstrating the "undesirability" of the case.  Thus, this factor weighs in favor of approval.

### 10.    Nature and Length of the Professional Relationship with the Client

Lead Counsel have represented Lead Plaintiff since shortly before filing the motion for appointment for lead plaintiff on her behalf.  ¶111.  Since then, Lead Plaintiff has been actively involved in this litigation and approved and supports the Settlement.  *Id.*

### 11.    Awards in Similar Cases

As discussed above, the requested fee of 33 1/3% is consistent with awards granted in class action cases.  Hence, this factor supports the requested fee award.

***

In sum, all of the applicable *Johnson* factors support Lead Counsel's request for attorneys' fees of 33 1/3% of the Settlement Fund.[11]

### E.    A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

In addition to applying the percentage approach to determine attorneys' fees in common fund cases, courts in this Circuit often perform a lodestar cross-check to confirm that the requested fee is reasonable.  *Vassallo*, 2016 WL 6037847, at *3.  However, the lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage method.  *See Halliburton*, 2018 WL 1942227, at *8-*9 ("The lodestar cross-check is usually applied 'to avoid windfall fees' . . . [D]istrict courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself.").

---

[11] Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair.  *See Go Frac, LLC*, 2017 WL 3699350, at *2–3 (Gilstrap, J) (awarding 35% of the settlement where class members had notice of the requested fees and did not object); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").  Here, the notice program informed potential Class Members that Lead Counsel would request attorneys' fees of up to 33 1/3% of the Settlement Fund.  Although the date for filing objections is October 10, 2018, Lead Counsel is not aware of any objections to the fee request or Settlement as of the date of this filing. ¶76.

"Under [the lodestar] method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate," then applies a multiplier upward or downward. *Id.* at *9.  Here, the cumulative time expended by Plaintiff's Counsel is more than 1,927 hours. ¶103.  Based on current rates, the resulting lodestar for the services is $1,096,535.75.  *See Halliburton*, 2018 WL 1942227, at *13 (calculating rates using class counsels' firms' current rates).  The requested fee thus equates to a multiplier of 2.74.  This is well within the range of reasonableness, because multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit" *Burford*, 2012 WL 5471985, at *6 n.1;  *see also In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 751 & n.20 (S.D. Tex. 2008) (awarding percentage fee equal to a multiple of 5.2 times lodestar, and stating that "[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 263, 333 (W.D. Tex. 2007) (stating the average range of multiplies in class actions is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Di Giacomo*, 2001 WL 34633373, at *11 (stating same and approving 5.3 multiplier).  Thus, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

## IV.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement." *Halliburton*, 2018 WL 1942227, at *14.  Here, Plaintiff's Counsel expended $70,343.38 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm.  ¶108.  These expenses are well-documented, based on the books and records maintained by each firm, and reflect the costs of prosecuting this litigation.  Moreover, these costs were reasonable and necessary.  They include, among other things: fees for experts; translations; online legal research costs; travel and lodging expenses; copying; mail; telephone; and deposition transcripts.  ¶ *Id.* Courts routinely permit the reimbursement of similar expenses. *Halliburton*, 2018 WL 1942227, at *14.  Additionally, the Postcard Notice informed potential Class Members that Lead Counsel would seek reimbursement of expenses up to $125,000, and, to date, no objection to the expense

13

application has been filed.  The requested expenses should, therefore, be awarded. *See Go Frac, LLC*, 2017 WL 3699350, at *2–3 (awarding expenses in the absence of objections).

## V. THE COURT SHOULD AWARD LEAD PLAINTIFF HER COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78U-4(A)(4)

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits Lead Plaintiff to recoup litigation costs (including lost wages) incurred as a result of serving as lead plaintiff in the Action and ensuring that the Class was adequately represented.  Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000); *Burford*, 2012 WL 5471985, at *6. Here, Lead Plaintiff respectfully requests modest reimbursement in the amount of $2,500 for the time she has expended on behalf of the Class. ¶111.  Such a request is plainly fair and reasonable given Lead Plaintiff's efforts on behalf of the Class throughout the course of this litigation.   Indeed, Ms. Wu fulfilled her duties as Lead Plaintiff by: (a) regularly communicating with attorneys at GPM regarding the posture and progress of the case; (b) reviewing pleadings, briefs and court orders filed in the Action and discussing them with counsel; (c) consulting with her attorneys regarding the settlement negotiations; and (d) evaluating and approving the proposed Settlement. ¶ *Id*.  In light of the substantial work done by Lead Plaintiff, the amount requested is eminently reasonable, and is consistent with, or lower than, awards in other cases.   *See J.C. Penney Co.*, 2017 WL 6590976, at *6 (awarding compensation awards pursuant to the PSLRA of $10,200 and $1,500); *City of Omaha*, 2015 WL 965696, at *4 (awarding $5,000 to Lead Plaintiff pursuant to the PSLRA); *Simons v. Dynacq Healthcare, Inc.*, No. H-03-5825 (S.D. Tex Jan. 10, 2007) (awarding two Lead Plaintiffs an aggregate of $7,077 pursuant to the PSLRA) (Sams Decl., Ex. F).  Accordingly, Lead Plaintiff respectfully requests that the Court grant her request.

## VI. CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court grant the

14

Motion.[12]

Date: September 26, 2018                         Respectfully submitted,

                                               **GLANCY PRONGAY & MURRAY LLP**


                                               By:  *s/ Ex Kano S. Sams II*
                                               Ex Kano S. Sams II
                                               Lionel Z. Glancy
                                               Jason L. Krajcer
                                               Leanne H. Solish
                                               1925 Century Park East, Suite 2100
                                               Los Angeles, California 90067
                                               Telephone: (310) 201-9150
                                               Facsimile: (310) 201-9160
                                               lglancy@glancylaw.com

                                               *Lead Counsel for Lead Plaintiff and the Class*

                                               **THE ROSEN LAW FIRM, P.A.**
                                               Laurence M. Rosen
                                               275 Madison Avenue, 34th Floor
                                               New York, New York 10016
                                               Telephone: (212) 686-1060
                                               Facsimile: (212) 202-3827
                                               lrosen@rosenlegal.com

                                               *Additional Counsel for Lead Plaintiff and the Class*

                                               **AHMAD ZAVITSANOS ANAIPAKOS ALAVI & MENSING PC**
                                               Sammy Ford IV
                                               State Bar No. 24061331
                                               1221 McKinney, Suite 2500
                                               Houston, Texas 77010
                                               Telephone: (713) 655-1101
                                               Facsimile: (713) 655-0062
                                               sford@azalaw.com

                                               *Liaison Counsel for Lead Plaintiff and the Class*

---

[12] A revised proposed Order granting the requested relief will be submitted with Lead Counsel's reply papers after the deadline for objecting to the motion has passed.

## <u>PROOF OF SERVICE</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On September 27, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Texas, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 27, 2018, at Los Angeles, California.


<u>*s/ Ex Kano S. Sams II*</u>
Ex Kano S. Sams II

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h), on September 25, 2018, counsel for Lead Plaintiff Emily Wu ("Lead Plaintiff") conferred with counsel for Defendants regarding Lead Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; Memorandum of Law in Support Thereof.  On September 26, 2018, counsel for Defendants indicated that Defendants do not oppose Lead Plaintiff's motion.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II
