**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

RANJIT SINGH, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

- against-

21VIANET GROUP, INC., SHENG CHEN, SHANG-WEN HSIAO, TERRY WANG, STEVEN ZHENGQING ZHANG, and ERIC CHU,

Defendants.

Case No. 2:14-CV-00894-JRG-RSP

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## I. PRELIMINARY STATEMENT

Lead Plaintiff Emily Wu ("Lead Plaintiff"), on behalf of herself and the Settlement Class, respectfully submits this memorandum of law in support her Unopposed Motion for Approval of Distribution Plan (the "Motion").[1] The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Nordskog Declaration.

## II. BACKGROUND

On April 6, 2018, the Parties entered into the Stipulation, the terms of which established a $9,000,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities who or which purchased or otherwise acquired 21Vianet Group, Inc. American Depositary Shares between August 20, 2013, and August 16, 2016, inclusive, and were allegedly damaged thereby.

The Court granted preliminary approval of the Settlement on May 21, 2018. ECF No. 53 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 26,034 Notice Packets to potential members of the Settlement Class, published the Summary Notice in *Investor's Bus*iness Daily and transmitted the Summary Notice over *PR Newswire* (a national newswire service), set up a toll-free telephone helpline, and established a settlement website (www.21vianetsecuritieslitigation.com). *See* Nordskog Decl. ¶ 4. The website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Proof of Claim forms.

---

[1] Unless otherwise stated, all capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 6, 2018 (ECF No. 51-1, the "Stipulation"), or the Declaration of Eric A. Nordskog in Support of Lead Plaintiff's Motion for Approval of Distribution Plan ("Nordskog Decl." or "Nordskog Declaration"), submitted on behalf of the Court-approved Claims Administrator, A.B. Data ("Claims Administrator").

On November 9, 2018, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 61. On December 7, 2018, the Court entered an order approving the Plan of Allocation, which was explained in the Notice sent to potential Settlement Class Members, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 62.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## III. CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Proof of Claim Forms by mail, postmarked on or before October 31, 2018. *See* ECF No. 56-1, Exhibit A ("Notice") at 2. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Nordskog Decl., ¶¶ 18-26.

Of the 3,873 Proofs of Claim submitted to the Claims Administrator, 337 were paper submissions, and 144 were online submissions through the online filing component on the settlement website. *Id.*, ¶ 8. The remaining 3,392 Claims were E-Claims filed by 164 E-Claim filers. *Id.*, ¶ 12. E-Claim filers are typically banks, brokers, nominees and other third-party filers, who file Claims on behalf of a large number of Claimants. *Id.* Because E-Claim filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process. *See id.*

If a Proof of Claim Form was deficient or defective, the Claims Administrator sent a rejection letter, a sample of which is attached as Exhibit A to the Nordskog Declaration, advising the Claimant that he, she, or it had twenty (20) days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶ 19 and Ex. A. Of the 481 paper and online Claims, the Claims Administrator sent rejection letters for 303 Claims (or 63%). *Id.*, ¶ 18. Similarly, for the E-Claims, the Claims Administrator sent a Status Email, a sample of which is attached as Exhibit B to the Nordskog Declaration, advising the Claimant that he, she, or it had twenty (20) days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶¶ 21-22 and Ex. B. The Claims Administrator also sent a Status Spreadsheet, a sample of which is attached as Exhibit C to the Nordskog Declaration, detailing any deficiencies related to the E-Claim. *Id.*, ¶¶ 21, 24 and Ex. C. Of the 3,392 E-Claims submitted, 2,665 were incomplete or deficient and were filed by a total of 164 E-Claim filers. *Id.*, ¶ 21. The Claims Administrator sent the Status Emails and Status Spreadsheets to each of the 155 E-Claim filers. *Id.*, ¶ 25. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. *Id.*, ¶¶ 18-26. As a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement. *Id.*, ¶ 26.

Ultimately, as detailed in the Nordskog Declaration, after the deficiency process was complete, the Claims Administrator determined that 989 Claims are acceptable and should receive a distribution. Nordskog Decl., ¶¶ 36-37. This number includes the 69 Late But Otherwise Eligible Claims (addressed in Section IV below). *Id.*, ¶ 29, 37. These 989 Claims represent a total Recognized Loss amount of $172,525,160.33.[2] *Id.*, ¶¶ 36-37, Exs. E and F. The Claims

[2] The Recognized Loss amount is $163,844,247.60 for the 920 timely valid Claims and

Administrator also determined that 2,884 Claims are not eligible and should be rejected for the following reasons: (i) 2,491 Claims did not result in a recognized loss under the Plan of Allocation; (ii) 156 Claims had no purchase of 21Vianet ADSs during the Settlement Class Period; (iii) 233 Claims were duplicates; (iv) 2 Claims were withdrawn; (v) 1 Claim had uncured deficiencies; and (vi) 1 Claim was identified as questionable and the Claimant did not seek court review. *Id.*, ¶¶ 38-39 and Ex. G.

## IV. LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the October 31, 2018 deadline. Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of April 10, 2020 – over 17 months after the Court-imposed October 31, 2018 deadline.

Of all the 3,873 Proofs of Claim submitted, 948 were received or postmarked after the October 31, 2018 deadline, but before the Claims Administrator's imposed cut-off date of April 10, 2020. Nordskog Decl., ¶¶ 29, 37. Of these 948 Claims, 69 are otherwise eligible (the "Late But Otherwise Eligible Claims"). *Id.* These 69 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the

---

$8,680,912.73 for the 69 Late But Otherwise Eligible Claims.

equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prods. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that the Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See id.*, ¶ 41.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after April 10, 2020 be included in the initial distribution, unless the Court later orders otherwise. *Id.* "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V. THE COURT SHOULD REJECT THE SINGLE DISPUTED CLAIM

As part of the deficiency process, the Claims Administrator informed Claimants whose Claims were rejected that they could request judicial review of their Claims. Nordskog Decl., ¶ 27. Two Claimants requested such review. The Claims Administrator was able to resolve one request for court review through the deficiency process. *Id.*, ¶ 28. Thus, only one claim remains in which the Claimant has requested judicial review (the "Disputed Claim"). The Claims Administrator has determined that the Disputed Claim does not calculate to a Recognized Claim pursuant to the Court-

approved Plan of Allocation and thus recommends rejecting the claim. *Id.*, Ex. D.

Upon review of the Disputed Claim, the Claims Administrator noted that Claimant purchased 55,000 21Vianet ADSs from October 24, 2014 through November 3, 2014. These 55,000 shares were sold on November 6, 2014. The Recognized Loss Amount of these shares pursuant to the Plan of Allocation is zero because all shares purchased during the Settlement Class Period were also sold during the same inflationary period. *Id.*, ¶ 28, Ex. D. In other words, the shares were not held over a corrective disclosure date—a date on which the alleged fraud was either fully or partially revealed and there was a corresponding price drop.[3]

The Plan of Allocation, which was included in the Notice disseminated to Settlement Class Members, notified Settlement Class Members that for "shares sold between August 20, 2013 and August 16, 2016, the Recognized Loss shall be . . . [t]he applicable purchase artificial inflation per share figure less the applicable sales date artificial inflation per share figure" multiplied by the number of shares. *See* Notice (ECF No. 56-1, Exhibit A) at 7. Furthermore, the artificial inflation per share from September 11, 2014 through November 25, 2014 is $4.48. *Id.*at 12. As such, the claimant's shares were purchased and sold at the same inflation rate and therefore there is no Recognized Loss. The Claims Administrator sent the Claimant a deficiency letter, to which the Claimant responded that he sought judicial review because the Claimant suffered a market loss. However, the Claims Administrator sent multiple emails and voicemails explaining that the Disputed Claim does not result in a Recognized Loss Amount pursuant to the Plan of Allocation. The Claimant has not responded to the Claims Administrator's emails or voicemails. *See id.*, Ex. D.

Moreover, after holding a hearing on October 31, 2018 to determine the fairness of the Plan of Allocation, the Court granted final approval of the Plan of Allocation in an order dated December

[3] Alleged disclosure dates were: September 9, 2014, September 10, 2014, September 11, 2014, November 25, 2014, May 26, 2015, and August 16, 2016. *See* Notice at 7.

7, 2018. ECF No. 62. Therefore, the grounds on which the Claimant seeks judicial review are inadequate and the Court should accept the Claims Administrator's determination to reject the Disputed Claim.

## VI. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id.*, ¶ 41(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks. However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, then if Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a Second Distribution. During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds

remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator determine additional distributions are no longer economically feasible. *Id.*, ¶ 41(b).

If at this point funds remain in the Net Settlement Fund, at the discretion of Lead Counsel, distributions would be made on a *pro rata* basis for Claims that were previously submitted but modified after September 30, 2019 and that would have been eligible for payment or an additional payment under the Plan of Allocation if received prior to September 30, 2019, but only to the extent that the additional distribution would bring them into parity with other Authorized Claimants. *Id.*, ¶ 41(c).

Finally, following this discretionary distribution, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, with the Court's approval, the remaining balance shall be contributed to the Investor Protection Trust, a non-sectarian, not-for-profit organization dedicated to investor education. *See* Blandin Decl.[4] ¶ 2; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (approving Investor Protection Trust as the *cy pres* beneficiary in a securities class action settlement); *Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (same). The proposed Class Distribution Order filed herewith confirms the Settlement's provisions for such re-distribution of any residue of the Net Settlement Fund.

## VII. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or

[4] Declaration of Don M. Blandin in Support of Lead Plaintiff's Motion for Approval of Distribution Plan ("Blandin Decl.") submitted on behalf of Investor Protection Trust.

otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order.

## VIII. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $148,980.30. Nordskog Decl. ¶ 40, Ex. H (compilation of Claim's Administrator's invoices). To date, the Claims Administrator has received payment of $148,511.46. Accordingly, there is a total of $468.84 payable to the Claims Administrator. The estimate to conduct the Initial Distribution is $14,154.72. Therefore, Lead Counsel request that the Court authorize the payment to the Claims Administrator, from the Settlement Fund, of $14,623.56 consisting of $468.84 for fees and expenses actually accrued and $14,154.72 in anticipation of the work that will be performed for the first distribution.[5]

---

[5] If the fees and expenses requested to conduct the first distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## IX. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (i) in no less than one (1) year after the Initial Distribution of the Net Settlement Fund, the Claims Administrator destroy the paper copies of the Proofs of Claim and all supporting documentation; and (ii) in no less than one (1) year after final distribution of the Net Settlement Fund, the Claims Administrator destroy the electronic copies of the Proofs of Claim and all supporting documentation.

## X. CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Court grant the Motion.

Dated: May 6, 2020

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Ex Kano S. Sams II*
Ex Kano S. Sams II
Lionel Z. Glancy
Jason L. Krajcer
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff and the Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com

*Additional Counsel for Lead Plaintiff and the Class*

**AHMAD ZAVITSANOS ANAIPAKOS ALAVI & MENSING PC**
Sammy Ford IV
State Bar No. 24061331
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
Email: sford@azalaw.com

*Liaison Counsel for Lead Plaintiff and the Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On May 6, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Texas, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 6, 2020, at Los Angeles, California.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), on May 4, 2020, counsel for Lead Plaintiff Emily Wu ("Lead Plaintiff") conferred with counsel for Defendants regarding Lead Plaintiff's Motion for Approval of Distribution Plan. On May 4, 2020, counsel for Defendants indicated that Defendants do not oppose Lead Plaintiff's motion.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II